# WILFRED GAREDPY v. CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY.[1]

February 1, 1929.

No. 26,950.

[1]Reported in 223 N. W. 605.

332

See note in 46 A. L. R. 1234.

*F. W. Root, C. O. Newcomb, A. C. Erdall* and *W. H. Gillitt,* for appellant.

*Tautges, Wilder & McDonald,* for respondent.

HILTON, J.

Defendant appealed from an order denying its alternative motion for judgment non obstante or for a new trial.

Action brought by guardian ad litem to recover damages under the federal employers liability act for injuries sustained by plaintiff on November 1, 1926, while employed by defendant as a section laborer at Channing, Michigan, such employment having been continuous for eight months preceding the accident. The complaint charged negligence of defendant; the answer denied it and alleged assumption of risk by plaintiff, which was denied by the reply.

Plaintiff was 20 years of age. He was one of a crew of four men riding upon a motor car, similar to a section handcar but gasolene propelled. The crew consisted of a section foreman, plaintiff and two other laborers. On the day in question, the foreman was seated on the left front side of the car; plaintiff, by direction of the foreman, was seated on the right front side, and the other two men on the right and left rear sides. On several other days plaintiff had occupied, by direction of the foreman, either the right or left rear side.

The complaint contained the usual allegations in this kind of negligence actions, including among others failure to furnish a

reasonably safe place to work, omission to warn and advise of risks, dangers and hazards of occupation which were unknown to and not appreciated by plaintiff, and also alleged the operation of the car at a high, excessive and dangerous rate of speed and without having the same under reasonable or proper control. Plaintiff also claimed that while this car, operated by the foreman, was going at such excessive and unusual rate of speed, it gave two violent jerks, causing an iron lining bar, about five feet long, to be thrown ahead and to stick in between the ties, catching plaintiff under the knee and throwing him in front of the car so that he was run over and injured. As usual, the evidence was conflicting. The jury returned a verdict for $33,000, which was reduced by the court to $28,000; but it was ordered that in case plaintiff did not accept such reduc-tion a new trial should be granted solely upon the question of damages. The reduction was accepted.

■ The court permitted the defendant, without plaintiff's objection, to amend its answer so as to permit a further defense of contributory negligence and to allege that any injury sustained by plaintiff was caused by his own want of care. At the conclusion of plaintiff's case, he moved to amend the complaint so as to make it more specific and so as to conform to the proof. This motion was granted over the objection of defendant. Defendant moved for a continuance on the ground that the amendments injected a new issue into the case, which motion was denied. Both rulings are assigned as error. The amendments did not materially change the issues; defendant made no showing that it would require additional time to prepare for trial or to secure new witnesses to meet the testimony already offered by plaintiff. The witnesses that defendant then had in court were evidently prepared to testify on all the issues in the case and did so. Defendant was not prejudiced. Had new material issues been put in the case by the amendments and a proper showing made as to the necessity for a continuance, the situation would have been entirely different, as it was in Despatch Laundry Co. v. Employers Liability Assur. Corp. 105 Minn. 384, 117 N. W. 506, 118 N. W. 152.

The allowance of amendments during a trial is well within the discretion of the trial court, and its action will not be reversed on appeal except for a clear abuse of discretion. See G. S. 1923, §§ 9280, 9281; Adams v. Castle, 64 Minn. 505, 67 N. W. 637; Briggs v. Rutherford, 94 Minn. 23, 101 N. W. 954; Foster v. Gorden, 96 Minn. 142, 104 N. W. 765; English v. M. & St. P. S. Ry. Co. 96 Minn. 213, 104 N. W. 886; Schultz v. Thompson, 156 Minn. 357, 194 N. W. 884; State v. Wiese, 161 Minn. 28, 200 N. W. 746; Carlson v. Lesselyoung, 163 Minn. 517, 204 N. W. 326; Johnson v. Elmborg, 165 Minn. 67, 205 N. W. 628; 5 Dunnell, Minn. Dig. (2 ed.) § 7708, et seq. and cases cited. The same rule maintains generally as to granting or refusing to grant continuances. 1 Dunnell, Minn. Dig. (2 ed.) § 1710, and cases cited. The court did not commit error.

Plaintiff was permitted to call Federspiel, the section foreman, for cross-examination under the statute, over objection of defendant. G. S. 1923, § 9816, provides:

"A party to the record of any civil action * * * or the directors, officers, superintendent, or managing agents of any corporation which is a party to the record, may be examined by the adverse party as if under cross-examination, subject to the rules applicable to the examination of other witnesses. The party calling such adverse witness shall not be bound by his testimony, and the testimony given by such witness may be rebutted by the party calling him for such examination by other evidence. * * *"

Witness was, both at the time of the accident and at the time of the trial, and for two years had been, in the employ of defendant as a section foreman. At the time of the accident he was exclusively in charge of and operating the motor car, and plaintiff and the other two employes were working under his sole direction and supervision. He also inspected the tools on the car as a part of his duties. Under the situation in this case, cross-examination under the statute was properly permitted. Bennett v. Backus Lbr. Co. 77 Minn. 198, 79 N. W. 682. The cases of May v. C. M. & St. P. Ry. Co. 147 Minn. 310, 180 N. W. 218, and Moore v. St. Paul City Ry. Co. 136 Minn. 315, 162 N. W. 298, are readily distinguishable. If it

had not been proper to so permit, there was no error, for an examination of the entire record shows that defendant was not prejudiced thereby. 6 Dunnell, Minn. Dig. (2 ed.) § 10327(b), and cases cited; Bernick v. McClure, 107 Minn. 9, 119 N. W. 247; Smith & Nixon Piano Co. v. Lydick, 110 Minn. 82, 124 N. W. 637; Leystrom v. City of Ada, 110 Minn. 340, 125 N. W. 507.

■ Error is assigned on the allowance of answers to two questions which were objected to on the ground that they were leading and suggestive. There was no abuse of the discretion vested in the trial court. Its control in that regard is practically absolute. Usher v. Eckhardt, 176 Minn. 210, 222 N. W. 924.

At the close of plaintiff's case, defendant moved for a dismissal of the case on the ground that plaintiff had failed to show any actionable negligence on the part of defendant; that his story as disclosed was a physical impossibility; and that plaintiff had assumed the risk. At the close of all the testimony, defendant moved for a directed verdict on the ground that as a matter of law the accident could not have happened in the way plaintiff testified; that he assumed the risk; and that he had failed to show any actionable negligence on the part of defendant. Both of these motions were denied, and we think properly so. There was a question of fact, which was clearly for the determination of the jury.

■ The trial court instructed the jury as follows:

"You are also instructed at this time to disregard the arguments of counsel on the question of contributory negligence, as the court will not instruct you on that question and does not believe it is for your consideration, and it so has been agreed by counsel that the question of contributory negligence is not a jury question, so you are to disregard the arguments of counsel on that question."

This is assigned as error. There is nothing in the record or in defendant's brief to indicate that a wrong statement was made by the court as to the agreement of counsel as above stated. No exception was taken by defendant to the charge. It was not made through mistake and inadvertence. No error was committed.

■ In its charge relative to damages, the court stated:

"If you find by a fair preponderance of the evidence that the defendant was negligent and that negligence was the proximate cause of the injury, and you do not find that the plaintiff assumed the risk, you will find for the plaintiff and then consider the question of damages."

Further instructions were given relative to medical expert testimony and the weight to be given the same and as to the American experience tables of mortality, the court stating:

"There has been testimony to show that the American experience tables of mortality show that the plaintiff in this case had a life expectancy of 41.53 years. This is not positive. He might live longer, and he might live less years. It is a matter however that you may take into consideration."

Manifestly the court overlooked a portion of its customary charge on the question of damages, stating in the memorandum:

"The court failed to charge on the question of damages as fully as was its custom in personal injury cases, and as fully as it intended to do. This failure was not called to the attention of the court at the trial by either counsel and, undoubtedly, was entirely overlooked by them as it was by the court. If it was not overlooked by counsel for defendant he should have called the court's attention to it. Outcelt v. C. B. & Q. R. Co. 150 Minn. 398, 185 N. W. 495; Sassen v. Haegle, 125 Minn. 441, 147 N. W. 445, 52 L.R.A. (N.S.) 1176; Steinbauer v. Stone, 85 Minn. 274, 88 N. W. 754."

The record does not disclose any request for instructions by defendant, and no exceptions were taken to the charge. Defendant's assignments of error in this regard relate exclusively to the question whether the court clearly charged the jury as to the rule of damages to be applied to the federal employers liability act, and included the question as to the proper use of the American experience tables of mortality in cases of this character. We think the statement made by the trial court as to the duty of counsel is correct, and there should not be a reversal on the ground complained of. Olson v. Aubolee, 92 Minn. 312, 99 N. W. 1128; Ellington v.

G. N. Ry. Co. 92 Minn. 470, 100 N. W. 218; Kramer v. N. W. Elev. Co. 97 Minn. 44, 106 N. W. 86; Steinbauer v. Stone, 85 Minn. 274, 88 N. W. 754; Campbell v. C. N. Ry. Co. 124 Minn. 245, 144 N. W. 772; Ebeling v. International Harv. Co. 125 Minn. 466, 147 N. W. 441; Outcelt v. C. B. & Q. R. Co. 150 Minn. 398, 185 N. W. 495; Soderberg v. Crosier, 160 Minn. 468, 200 N. W. 629; Cowing v. Cowing, 161 Minn. 533, 201 N. W. 936; Ceylon Farmers Elev. Co. v. Fidelity & Deposit Co. 163 Minn. 280, 203 N. W. 985; Rimmer v. Cohen, 172 Minn. 134, 215 N. W. 198; Eichhorn v. Lundin, 172 Minn. 591, 216 N. W. 537; Davis v. Minneapolis St. Ry. Co. 173 Minn. 186, 217 N. W. 99; McCabe v. Duluth St. Ry. Co. 175 Minn. 22, 220 N. W. 162; Nagi v. Detroit United Ry. 231 Mich. 452, 204 N. W. 126.

■ We now come to the amount of the verdict as reduced by the trial court. At the time of the injury plaintiff was 20 years of age with an expectancy of 41.53 years. He was earning $3.04 per day. The motor car ran over his right leg about three inches above the knee. The bone was to some extent ground up and the flesh torn, with pieces of bone sticking through it. The thumb of his left hand was fractured. He of course suffered great pain, including some in the small of his back. He was taken on November 1, 1926, to defendant's hospital at Iron Mountain, Michigan, where he received treatment from defendant's surgeons until February 22, 1927, when he was taken to a Minneapolis hospital. He remained there under surgeon's care until the time of the trial. Several operations were performed on the leg in both hospitals; without operations, pieces of bone came out of the leg, and there were frequent discharges of pus therefrom; there was much loss of sleep; he lost 43 pounds in weight; there was nerve shock and injury. The injury to the thumb was permanent, but the result obtained was good. There was a lateral motion of the knee which is permanent and throws the knee joint out of alignment. There is a permanent shortening of three inches in the right leg. He will likely be obliged to use crutches, or at any rate a cane, the balance of his life. No further enumeration of the injuries need here be made;

they were very serious; so far as disability is concerned, it is about as serious as would have been the loss of the leg above the place where the fracture occurred.

We have had the benefit of able and exhaustive briefs and forceful oral arguments. The case has been carefully considered in all of its features, including assignments of error not specifically referred to. We are of opinion that the verdict, even as reduced by the trial court, is too high. It is therefore ordered that a new trial be granted on the question of damages only unless, within 20 days after the remittitur herein is sent down, plaintiff shall file in the district court a consent, signed by him or his attorney, that the verdict may be reduced to $23,000. If this be done, the order appealed from shall stand affirmed and the plaintiff shall be entitled to judgment on the verdict as so reduced.

Affirmed on condition.

DIBELL, J. (dissenting in part).

I concur except that I think there should be no further reduction of damages.

STONE, J. (dissenting).

If the case is to be affirmed otherwise, I cannot see the justification for again reducing the recovery. In my opinion, there are circumstances requiring a new trial.